UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTOINETTE BROWN,

                      Plaintiff,

          -v-

DEPUTY MONTONE; DR. CHOUNDRY;
DR. ROTH; and NURSE VARGAS,

                      Defendants.

No. 17-CV-4618 (KMK)

OPINION & ORDER

Appearances:

Antoinette Brown
Bedford Hills, NY
*Pro Se Plaintiff*

Janice Powers, Esq.
New York State Office of the Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Pro se Plaintiff Antoinette Brown ("Plaintiff"), currently an inmate at Bedford Hills Correctional Facility ("Bedford Hills"), brings this Action, pursuant to 42 U.S.C. § 1983, against Deputy Montone ("Montone"), Dr. Choundry, Dr. Roth, and Nurse Vargas (collectively, "Defendants"). Plaintiff alleges that Defendants violated her rights under the Eighth Amendment by failing to provide her with proper medical care to treat an infected cyst and by placing her in a cold room after surgery. (*See* Compl. 2–3 (Dkt. No. 2).)[1] Before the Court is Defendants' Motion To Dismiss the Complaint pursuant to Federal Rules of Civil Procedure

---

[1] For ease of reference, given Plaintiff's use of a standard complaint form, the Court cites to the ECF-generated page numbers stamped at the top of Plaintiff's Complaint.

12(b)(6) and 41(b). (*See* Defs.' Mot. To Dismiss ("Defs.' Mot.") (Dkt. No. 16).) For the reasons to follow, the Rule 12(b)(6) Motion is granted.

I. Background

A. Factual Background

The following facts are taken from the Complaint, and are assumed true for the purpose of resolving the Motion.

In May 2015, Plaintiff was transferred to Bedford Hills from Albion Correctional Facility. (*See* Compl. 2–3.) Plaintiff claims that at the time she was transferred to Bedford Hills, her left breast was already infected, with what was ultimately determined to be an infected cyst, for one year. (*See id.* at 3.) While at Bedford Hills, Plaintiff's breast remained infected for one year prior to her receiving an operation. (*See id.*) Specifically, on October 3, 2016, Dr. Roth operated on Plaintiff's left breast to treat the infection. (*See id.*) Afterwards, "they placed [Plaintiff] in a freezing cold infirmary room w[ith] [six] cold vents w[ith] air duc[t]s blowing cold air." (*Id.*) "[T]heir excuse" for the cold temperature was that the heat did not come on until October 10. (*Id.*) In lieu of turning on the heat, Plaintiff was given "[six] blankets [and] [three] sets of clothing" to keep warm. (*Id.*) Plaintiff alleges that the "other [doctor] that runs the infirmary" and unnamed C.O.'s, none of whom is a defendant here, "saw and knew [Plaintiff] was cold." (*Id.*)

Dr. Choundry, "[Plaintiff's] medical doctor," treated her for a year, though it is not clear whether this was before or after the surgery. (*Id.*) According to Plaintiff, Dr. Choundry "often squeezed 'pus[s] and blood' from this breast[,] documented it in [Plaintiff's] chart[,] but did nothing to get [Plaintiff] to a[n] outside hospital for surgery." (*Id.*)

Plaintiff also alleges that, at some unspecified point in time, she went to "the clinic" and told "Nurse Vargas that [she] had a 'salty' taste in [her] mouth." (*Id.*) Nurse Vargas then told Plaintiff to "go back[,] lay down[,] and drink water." (*Id.*) The next day, Plaintiff was brought back to the medical unit and placed in the infirmary with "a f/s over 500."[2] (*Id.*) Plaintiff then "had a mild stroke" and Bell's palsy. (*Id.*)

B. Procedural History

Plaintiff filed her Complaint on June 15, 2017. (*See* Dkt. No. 2.) Plaintiff's request to proceed in forma pauperis was granted on July 24, 2017. (*See* Dkt. No. 6.) On October 23, 2017, counsel for all Defendants submitted a letter to the Court requesting permission to file a Motion To Dismiss on behalf Defendants pursuant to Federal Rules of Civil Procedure 12(b)(6) and 41(b). (*See* Letter from Janice Powers, Esq., to Court (Dkt. No. 12).) On October 24, 2017, the Court entered an Order that Defendants could file their Motion To Dismiss by November 22, 2017, and Plaintiff should respond to any Motion by December 22, 2017. (*See* Mot. Scheduling Order (Dkt. No. 15).)

On November 22, 2017, Defendants filed their Motion To Dismiss and accompanying papers. (*See* Dkt. Nos. 16–17.) Plaintiff did not file any opposition to the Motion. The Court will therefore consider the Motion fully briefed, but independently consider the merits of the Motion. *See Goldberg v. Danaher,* 599 F.3d 181, 183 (2d Cir. 2010) (explaining that district courts should consider the merits of a motion to dismiss rather than automatically grant the motion if a plaintiff fails to respond).

---

[2] Plaintiff does not define it means to have "a f/s over 500," (Compl. 3), but Defendants note in their Memorandum of Law that Plaintiff's allegation is that "she was in the medical unit for elevated fasting blood sugar," (Defs.' Mem. 6).

II. Discussion

A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of h[er] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

4

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [her] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B. Analysis

Plaintiff alleges that Defendants were deliberately indifferent to her medical condition, as she alleges that she had "a[n] infected cyst in [her] breast" that was not operated on for a year at

5

Bedford Hills. (Compl. 3.) Plaintiff also alleges that she was subjected to cruel and unusual punishment when she was "placed . . . in a freezing cold infirmary room w[ith] [six] cold vents w[ith] air duc[t]s blowing cold air." (*Id.*) Defendant Montone argues Plaintiff's claim against him must be dismissed for lack of personal involvement, (*see* Defs.' Mem. 9–11), and Defendants Vargas, Roth, and Choudhury argue that Plaintiff's claims must be dismissed because Plaintiff has not adequately shown that the alleged lack of medical care she received amounts to deliberate indifference to Plaintiff's serious medical needs, (*see id*. 11–14). The Court will address each of these arguments in turn.

1. Personal Involvement of Montone

Montone is the "Deputy of Medical" at Bedford Hills. (Order of Service 2 (Dkt. No. 5).) In order to establish liability, a § 1983 plaintiff must show that any given defendant "w[as] personally involved in the allegedly unlawful conduct," *Brown v. City of New York*, No. 13-CV-6912, 2017 WL 1390678, at *7 (S.D.N.Y. Apr. 17, 2017), because "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior," *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (italics omitted). Under § 1983, a supervisor may be shown to have been liable in the following ways:

> (1) actual direct participation in the constitutional violation[;] (2) failure to remedy a wrong after being informed through a report or appeal[;] (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue[;] (4) grossly negligent supervision of subordinates who committed a violation[;] or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Id.* at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Therefore, Plaintiff must plausibly allege conduct by Montone that falls into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still

6

control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff has not alleged any way in which Montone was personally responsible for, or involved in the circumstances that resulted in, her medical care. The gravamen of the claims against Montone would appear to be that Dr. Roth and Dr. Choundry failed to address Plaintiff's medical situation despite Montone's supposed position of authority in the prison system. However, the Complaint contains no allegations whatsoever that Montone was involved in decisions regarding what medical care Plaintiff received, or that he was aware of or somehow permitted Dr. Roth or Dr. Choundry to provide allegedly inadequate medical care to Plaintiff. *See Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (explaining that direct involvement encompasses "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal").

Even if Montone was generally responsible for the supervision of Dr. Roth and Dr. Choundry, something Plaintiff does not allege, the Complaint makes no claims Montone was "grossly negligent" in his supervision. *Hernandez*, 341 F.3d at 145. Moreover, Montone cannot be held personally liable for constitutional violations merely "because he was in a high position of authority" at Bedford Hills. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (affirming summary judgment in favor of the Commissioner of the New York Department of Correctional Services); *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (explaining that "[a] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority" (internal quotation marks omitted)). "Supervisory status, without more, is not sufficient to subject a defendant to [§] 1983 liability." *Fortunato v. Bernstein*, No. 12-CV-1630, 2015 WL 5813376, at *6

7

(S.D.N.Y. Sept. 1, 2015) (internal quotation marks omitted). Rather, personal involvement "requires a showing of more than the linkage in the prison chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (same).

Moreover, that Plaintiff wrote to Montone in his role as Deputy of Medical does not establish that Montone was aware of the infection or aware of the allegedly inadequate treatment. (*See* Compl. 5.) "It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517, at *7 (S.D.N.Y. Sept. 7, 2017) (alterations and internal quotation marks omitted); *see also Woodward v. Perez*, No. 12-CV-8671, 2014 WL 4276416, at *8 (S.D.N.Y. Aug. 29, 2014) ("It is well-established that a supervisory defendant's receipt of a single letter identifying an alleged wrong is insufficient for liability under [§] 1983."); *Walker v. Pataro*, No. 99-CV-4607, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability." (report and recommendation) (italics omitted)).

Accordingly, based on the lack of any claim linking the actions of Montone to the injuries allegedly suffered by Plaintiff, Montone's Motion To Dismiss is granted.

### 2. Eighth Amendment Claims against Dr. Roth, Dr. Choundry, and Nurse Vargas

Reading Plaintiff's complaint liberally, she appears to assert two distinct Eighth Amendment violations. First, Plaintiff alleges that she was subject to deliberate indifference to her serious medical needs, namely an infection in her left breast. Second, Plaintiff alleges that

8

she was subject to cruel and unusual punishment by being placed in a cold room after undergoing an operation on that cyst. The Court will address each of these claims in turn.

### a. Deliberate Indifference To Serious Medical Needs

#### i. Applicable Law

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A convicted prisoner's claim of deliberate indifference to her medical needs by those overseeing her care is analyzed under the Eighth Amendment because it is an allegation that the "conditions of confinement [were] a form of punishment" and thus is a "violation of [the] Eighth Amendment right to be free from cruel and unusual punishments." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).[3] The inquiry proceeds by two steps. "First, the plaintiff must establish that [s]he suffered a sufficiently serious constitutional deprivation. Second, the plaintiff must demonstrate that the defendant acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

"The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (internal quotation marks omitted). Analyzing this objective requirement involves two inquiries: "[t]he first inquiry is whether the

---

[3] Plaintiff's Complaint and the briefing on the instant Motions did not indicate whether Plaintiff was a convicted prisoner or a pretrial detainee at the time of the alleged violations. However, results from a New York State inmate information search indicate that Plaintiff (or someone with the same name and date of birth as Plaintiff) was first received into custody on August 4, 2014. *See* Inmate Information, New York State Department of Corrections and Community Supervision, http://nysdoccslookup.doccs.ny.gov/ (last visited June 11, 2018) (DIN # 14G0691). Thus, it appears that Plaintiff was a convicted prisoner when the alleged constitutional violations occurred in May 2015. Accordingly, the Court analyzes Plaintiff's claims under the Eighth Amendment standard.

9

prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and the second "asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the [C]ourt to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id.* at 280. To meet the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to h[er] health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003); *see also Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *2 (S.D.N.Y. Sept. 30, 2017) (same). Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock*, 315 F.3d at 162 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Under the second prong, the defendant must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions to be liable for meting out that punishment." *Darnell*, 849 F.3d at 35; *see also Nielsen v. Rabin,* 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (internal quotation marks omitted)). In other words, "[i]n medical-

treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen*, 746 F.3d at 63 (internal quotation marks omitted). "[M]ere negligence" is not enough to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (internal quotation marks omitted); *see also Vail v. City of New York*, 68 F. Supp. 3d 412, 424 (S.D.N.Y. 2014) (same). Relatedly, "mere disagreement over the proper treatment does not create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

ii. Analysis

Assuming here that Plaintiff's allegations regarding an infected cyst in her left breast and the mild stroke she suffered at an unspecified time constituted sufficiently serious medical conditions, Plaintiff has not adequately alleged that Defendants "acted with a sufficiently culpable state of mind." *Grimmett v. Corizon Med. Assocs. of N.Y.*, No. 15-CV-7351, 2017 WL 2274485, at *4 (S.D.N.Y. May 24, 2017). Plaintiff's medical needs were not ignored by Dr. Roth, Dr. Choundry, or Nurse Vargas. In her Complaint, Plaintiff alleges she had an infection in her left breast that was not operated from the time that Plaintiff was transferred to Bedford Hills in May 2015 until October 3, 2016. (Compl. 3.) However, Plaintiff does not allege that Dr. Roth, Dr. Choundry, or Nurse Vargas refused to treat her infection. In fact, Plaintiff alleges that Dr. Roth operated on Plaintiff to treat the infection, and there is no indication that he had declined to operate on her previously. (*See id.*) Moreover, Plaintiff alleges that Dr. Choundry "treated [her] for a year," and "often squeezed 'pus[s] and blood' from [her] breast." (*Id.*) Plaintiff does not specify whether this treatment occurred before or after the surgery, nor does

11

she indicate why such treatment would be deemed inadequate care under the circumstances. (*See id.*) *See Waller v. DuBois*, No. 16-CV-6697, 2018 WL 1605079, at *7 (S.D.N.Y. Mar. 29, 2018) ("The mere delay in surgery . . . does not constitute deliberate indifference."); *Robinson v. Clark*, No. 15-CV-8434, 2017 WL 775813, at *8 (S.D.N.Y. Feb. 27, 2017) (holding that a delay in surgery from April 2015 to December 2015 is insufficient, without more, to support an Eighth Amendment claim); *Feliciano*, 2017 WL 1189747, at *11 ("Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, the Second Circuit has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast-degenerating condition for three days; or delayed major surgery for over two years." (alterations and internal quotation marks omitted)); *Ferguson v. Cai,* No. 11-CV-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in [the Second] Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness."); *Beaman v. Unger*, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011) (holding that delay in treatment of wrist and finger fractures due to "the two nurses and [the doctor] misdiagnos[ing] [the plaintiff's] injuries, and fail[ing] to recognize the severity of those injuries . . . might conceivably show malpractice, but they do not state an Eighth Amendment claim."); *cf. Lloyd v. Lee*, 570 F. Supp. 2d 556, 568 (S.D.N.Y. 2008) (finding "a sixteen-month delay from the time [the plaintiff] was injured until he finally obtained relief in the form of surgery on his shoulder," to be sufficient to defeat a motion to dismiss where the plaintiff "purportedly experienced extreme pain, discomfort, and loss of mobility" throughout the relevant period). Here, Plaintiff's delayed surgery for a non-life-threatening and non-fast-degenerating condition,

coupled with treatment from Dr. Choundry for the condition, does not rise to the level of deliberate indifference.

Further, that Dr. Choundry "did not[] . . . get [Plaintiff] to an outside hospital for surgery," (Compl. 3), is not a basis for an Eighth Amendment claim. Nor is Nurse Vargas' advice to lay down and drink water in response to Plaintiff's statement that she had a salty taste in her mouth. Rather, each of these incidents is a dispute with the medical staff as to the particularities of Plaintiff's treatment. *See Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."); *Nelson v. Deming*, 140 F. Supp. 3d 248, 262 (W.D.N.Y. 2015) (dismissing deliberate indifference claim because the "[p]laintiff's disagreement with th[e] course of treatment does not amount to deliberate indifference by [the] [d]efendants"); *Washington v. Westchester Cty. Dep't of Corr.*, No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference."); *Idowu v. Middleton,* No. 12-CV-1238, 2013 WL 4780042, at *9 (S.D.N.Y. Aug. 5, 2013) ("[The] [p]laintiff's disagreement with [a defendant]'s diagnostic technique and medical judgment cannot provide the basis for a deliberate indifference claim under the Eighth Amendment."); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a [§] 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment."). This is particularly true given Plaintiff's surgery by Dr. Roth and Plaintiff's treatment the very next day for additional symptoms, which does not

appear to have involved Nurse Vargas, related to Bell's palsy and a mild stroke.  (*See* Compl. 3.) Plaintiff's allegations suggest that she received medical consultations and surgery, and the mere fact of a potential delay or a disagreement with the chosen methods of treatment is insufficient to support her Eighth Amendment deliberate indifference claim.  Therefore, this claim is dismissed.

### b.  Cruel and Unusual Punishment

Plaintiff also alleges that after the operation, she was "placed . . . in a freezing cold infirmary room w[ith] [six] cold vents w[ith] air duc[t]s blowing cold air."  (*Id.*)  Plaintiff was given six blankets and had three sets of clothing on, but "vapors were blowing out of [her] mouth like [she] was outside."  (*Id.*)

However, Plaintiff's Complaint fails to personally name *any* of the Defendants or offer *any* facts indicating their involvement in the alleged constitutional violations related to his placement in the cold room.  Plaintiff merely alleges that "they" placed her in the room after the operation, but does not identify who "they" are and makes no mention of who placed her in the room.  (*Id.*)  Thus, personal involvement on the part of any Defendant is lacking here.  *See Medina v. Kaplan*, No. 16-CV-7223, 2018 WL 797330, at *6 (S.D.N.Y. Feb. 8, 2018) (finding no personal involvement where the Plaintiff made no mention of who was involved in the alleged incident); *Andrews v. Ford*, No. 08-CV-3938, 2009 WL 2870086, at *3 (S.D.N.Y. Sept. 3, 2009) (dismissing for lack of personal involvement where "the [c]omplaint provides no factual

allegations indicating that any of the Defendants were personally involved in the alleged misconduct").

### III. Conclusion

For the reasons stated above, Defendants' Rule 12(b)(6) Motion To Dismiss is granted.[4] Because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, she must do so within 30 days of the date of this Opinion & Order. Plaintiff should include within that amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the original complaint. The amended complaint must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda. If Plaintiff fails to abide by the 30-day deadline, her claims may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 16), and to mail a copy of this Opinion & Order to Plaintiff's address listed on the docket.

SO ORDERED.

Dated: June 12, 2018
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[4] Because the Court has decided these cases by way of Defendants' Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court declines to consider Defendants' Motion pursuant to Federal Rule of Civil Procedure 41(b) with regard to Plaintiff's failure to prosecute.